UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

GAIL HARNESS,                          )
                                       )
        *Plaintiff,*                   )
                                       )        No. 3:18-CV-100
v.                                     )
                                       )        Judge Collier
ANDERSON COUNTY, TENNESSEE,            )
                                       )
        *Defendant.*                   )


**M E M O R A N D U M**

Before the Court is Defendant Anderson County, Tennessee's motion for summary judgment on all of Plaintiff Gail Harness's claims in this employment discrimination case. (Doc. 33.) Plaintiff responded in opposition (Doc. 38), and Defendant replied (Doc. 40). The Court will **DENY** Defendant's motion for summary judgment (Doc. 33).


I.      **BACKGROUND**

William T. Jones was elected as the Clerk of the Anderson County Circuit Court Clerk's Office on September 2, 2014, and took office shortly after that. (Doc. 38-1 at 1, 3 [Jones Decl. ¶¶ 2, 12].) He did not receive any training about work-place harassment when he took office. (*Id.* at 3 [Jones Decl. ¶ 12].) Jones had final authority over personnel decisions for the Clerk's Office, including hiring, firing, and establishing job duties. (*Id.* at 2 [Jones Decl. ¶ 5].) Employees of the Clerk's Office were, nevertheless, employees of Defendant. (*Id.* [Jones Decl. ¶ 6].)

Defendant included harassment policies in its employee handbooks dated May 1, 2011, and March 20, 2017. (Doc. 40-1 at 1 [Kim Jeffers-Whitaker[1] Aff. ¶¶ 3, 4]; Doc. 40-2 at 17–18 [2011 Handbook at 16–17]; Doc. 40-3 at 17–22 [2017 Handbook at 16–21].) Defendant was responsible for training Clerk's Office employees on personnel policies. (Doc. 38-1 at 3 [Jones Decl. ¶ 9].)

### A. Previous Complaints to Defendant About Jones

In November 2014, Clerk's Office employee Nichole Lucas made a written and oral complaint to Defendant's Human Resources ("HR") Director, Cathy Best, about Jones. (Doc. 38-2 at 3 [Letter from Lucas to Jeffers-Whitaker (Mar. 5, 2018)].[2]) Lucas alleged Jones made sexually explicit comments and jokes in the office; asked Lucas whether she had campaigned for, dated, performed favors for, or had sex with Jones's predecessor; told her to smile because he wanted his ladies to look beautiful for the camera; threatened her with losing her job; and repeatedly stood behind her chair in her cubicle with his hands on her shoulders, watching her work. (*Id.* at 1–2.) HR Director Best did not make Jones aware of Lucas's complaint or of any investigation at the time. (Doc. 38-1 at 3 [Jones Decl. ¶ 13].) Instead, Best told Lucas there would be an opening in

---

[1] Kim Jeffers-Whitaker is Defendant's current Human Resources Director. Defendant referred to her affidavit in its motion, but did not submit it until it filed its reply.

[2] Lucas's letter to Jeffers-Whitaker is not authenticated. *See* Fed. R. Evid. 901, 902. The letter therefore does not appear to be admissible in its current form. "A party may object that the material cited to support . . . a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Defendant's reply objects to the relevance of "the majority of the facts asserted in [Plaintiff's] response," but it does not object that any of those facts cannot be presented in admissible form. (Doc. 40 at 1.) The Court accordingly concludes that the contents of Lucas's letter could be presented in an admissible form. The same analysis and conclusion applies to the other unsworn exhibits attached to Plaintiff's response.

HR shortly.  (Doc. 38-2 at 3 [Lucas Letter at 3].)  Lucas applied for the job and was hired.  (*Id.*)
Lucas received other complaints about Jones during her time with HR.  (*Id.* at 4.)  Lucas, who no
longer works in HR, has now been told her original complaint is not in her personnel file.  (*Id.*)

In May 2015, Angela Brown made a written complaint about Jones to Russell Bearden,
who had succeeded Best as Defendant's HR Director.  (Doc. 38-3 at 1 [Email from Brown to
Bearden (May 5, 2015)].)  Brown had been employed at the Clerk's Office for a few days in March
2015.  (Doc. 38-4 at 1 [Bearden Aff.].[3])  Brown complained that Jones asked inappropriate
questions during her interview, including her age, her religion, whether she had a boyfriend, and,
indirectly, whether she was pregnant.  (Doc. 38-3 at 1 [Brown Email].)  She wrote that he told her
to smile because she looked prettier when she smiled.  (*Id.*)  She also wrote that after she started
the job, and after she told Jones she did not think the job was right for her, he told her to come into
his office and eat her lunch, which happened to be yogurt.  (*Id.*)  Jones watched her eat, and he
told her he had a fetish for women eating yogurt.  (*Id.*)  Brown wrote that she quit by text message
because she was too uncomfortable to go into the office to quit in person.  (*Id.*)

HR Director Bearden talked to Jones about Brown's complaint and asked Jones to respond
in writing, which Jones did.  (Doc. 38-4 at 1 [Bearden Aff.].)  When Bearden counseled Jones
about the seriousness of Brown's complaint, Jones laughed, saying he did not report to anyone,
and that "I could sit in my office butt naked with the door open and masturbate and there's nothing
you can do about it."  (*Id.*)  Bearden told Anderson County Mayor Terry Frank about Brown's

---

[3] The attestation block of Bearden's Affidavit is garbled.  (Doc. 38-4 at 2.)  The Court
concludes that the contents of Bearden's Affidavit could be presented in an admissible form for
the reasons discussed above regarding unsworn exhibits.  *See supra* n.1.

complaint and Jones's response. (*Id.*) Mayor Frank said Jones was new and might need some training, but she could not force him to do it because he was an elected official. (*Id.*) Bearden arranged sexual harassment training for Jones with a law firm, but Jones told Bearden he had completed an on-line course and gave Bearden a certificate. (*Id.*) When Bearden discussed the situation further with Mayor Franks, she said she could not do anything about it, because "that's just the way it is in Local Government." (*Id.* at 2.) Bearden closed the investigation because he was not able to reach Brown to discuss the discrepancies between her complaint and Jones's response. (*Id.*)

Jones's recollection of the investigation of Brown's complaint differs, in that he claims Bearden told him he could make Brown's complaint "go away" if Jones would go to anti-harassment training. (Doc. 38-1 at 3–4 [Jones Decl. ¶ 15].) Jones refused to go to the expensive training Bearden had arranged, but enrolled instead in a class by the University of Tennessee's County Technical Assistance Service. (*Id.*) Jones recalls that there was no additional training for him or for Clerk's Office staff after the Brown complaint. (*Id.* at 4 [Jones Decl. ¶ 16].)

Bearden heard "many rumors around the Courthouse" for the next two years, but he took no action because no one with first-hand knowledge approached him until Plaintiff did so in 2017. (Doc. 38-4 at 2 [Bearden Aff.].)

### B. Plaintiff's Employment

Plaintiff was hired as a part-time file clerk in the Clerk's Office in February 2016, following a brief internship for her college coursework. (Doc. 38-5 at 1 [Pl. Aff. ¶ 2].) Plaintiff was not given a copy of Defendant's employee handbook, nor did she ever see any information from Defendant about sexual harassment or how to report it. (*Id.* at 4 [Pl. Aff. ¶ 22].) In 2016,

Defendant approved an anti-harassment and anti-retaliation policy, but Jones refused to implement the policies in the Clerk's Office. (*Id.* at 2 [Pl. Aff. ¶ 7].) Plaintiff believed that she had to submit to Jones's behavior, as described below, to keep her job. (*Id.* at 2, 4 [Pl. Aff. ¶¶ 8, 22].)

Throughout Plaintiff's employment, Jones insisted that Plaintiff and other female employees call him "Daddy." (*Id.* at 1 [Pl. Aff. ¶ 3].) He referred to certain female employees of the Clerk's Office as "Daddy's Bitch," or "Daddy's Prissy Bitch." (*Id.*) He told Plaintiff he did not have a boss. (Doc. 33-2 at 1 [Pl. Sworn Statement at 7].[4]) Beginning when she was an intern, he would corner Plaintiff in a file room and "make suggestive comments about [her] appearance, encourage [her] to wear more provocative clothing, and compliment [her] on [her] breasts and . . . 'cleavage.'" (Doc. 38-5 at 1–2 [Pl. Aff. ¶¶ 4, 9].) He continued making comments of a sexual nature throughout her employment. (*Id.* at 2 [Pl. Aff. ¶ 10].) He also made such comments to Plaintiff using the instant-messaging app Snapchat, which automatically deletes messages unless they are saved. (*Id.* at 2–3 [Pl. Aff. ¶¶ 11, 12].)

Jones touched Plaintiff in a sexual manner throughout her employment. (*Id.* at 2 [Pl. Aff. ¶ 10].) He would approach Plaintiff from behind while she was making copies and place his hands on her hips. (*Id.*) He would rub her back while she was working. (*Id.*) He would sit on her desk and make her work around him. (*Id.*) He would pull a chair next to her, rest his head on her shoulder, and sometimes stare down her shirt. (*Id.*)

_____

[4] Defendant also cites page 20 of Plaintiff's Sworn Statement to support this allegation. (Doc. 34 at 4.) Half of the page to which Defendant appears to be citing is illegible. (Doc. 33-2 at 14.) What is legible, however, tends to support Defendant's assertion that Jones told Plaintiff he did not have a boss. (*See id.*)

In April or May 2016, a full-time position became available in the Clerk's Office. (*Id.* at 3 [Pl. Aff. ¶ 12].) Plaintiff told Jones she was interested in the position, as she was nearing her college graduation and needed full-time work. (*Id.*) Jones's Snapchat messages then turned sexually explicit. (*Id.* [Pl. Aff. ¶ 13].) Plaintiff asked Jones to stop because they were both married. (*Id.* [Pl. Aff. ¶ 14].)

Sometime in March, April, or May 2016, Jones asked Plaintiff to send him a picture of her breasts, and Plaintiff did so. (Doc. 33-1 at 15 [Pl. Dep. at 54].) Jones sent a message in response, of which Plaintiff does not remember the exact wording. (*Id.*) It did not include any pictures of Jones, nor did Jones ever send Plaintiff pictures of his body. (*Id.* at 25 [Pl. Dep. at 93].)

In June 2016, Jones told Plaintiff his wife had found out about his Snapchat messages. (Doc. 38-5 at 3 [Pl. Aff. ¶ 15].) He accused Plaintiff of telling his wife, and he said Plaintiff could forget about the full-time position and she was "going to pay for it." (*Id.*) He stopped sending Plaintiff Snapchat messages, but he continued his sexually harassing conduct in the office. (*Id.* at 4 [Pl. Aff. ¶ 19].)

In late July 2016, Plaintiff's then-husband called Mayor Frank and told her Jones was discriminating against Plaintiff by refusing to hire her for the full-time position. (*Id.* at 3 [Pl. Aff. ¶ 16].) Plaintiff is not aware of any corrective action or investigation, but Jones hired her for the full-time position in August 2016. (*Id.* at 4 [Pl. Aff. ¶ 18].)

Jones avers he was not informed about Plaintiff's husband's complaint until after this lawsuit was filed. (Doc. 38-1 at 4 [Jones Decl. ¶ 18].) Plaintiff avers, however, that in the fall of 2016, Jones told Plaintiff that her husband had almost gotten her fired by calling Mayor Frank. (Doc. 38-5 at 4 [Pl. Aff. ¶ 20].)

Jones issued Plaintiff disciplinary warnings on February 9, 2017, and March 30, 2017. (*Id.*) The first was for insubordination, for arguing with Jones about office procedures. (Doc. 33-1 at 19 [Pl. Dep. at 72].) Plaintiff admits she had a conversation with Jones, but denies they had an argument. (*Id.*) The second was for failing to write a receipt for a customer and for her drawer being over by six dollars. (*Id.* at 20 [Pl. Dep. at 73–74].) This warning was signed by Jessica Williams, not Jones, but Williams told Plaintiff that Jones was behind it. (*Id.*) Plaintiff alleges these warnings were "bogus" and were meant to intimidate her. (Doc. 38-5 at 4 [Pl. Aff. ¶ 20].) During the summer of 2017, Jones began threatening to transfer Plaintiff to the Oak Ridge office, which is referred to as the "clerk's graveyard." (*Id.* [Pl. Aff. ¶ 21].)

In August 2017, Plaintiff asked a friend's advice about her situation, and eventually received HR Director Bearden's name and telephone number. (*Id.* at 5 [Pl. Aff. ¶ 23].) That was the first time Plaintiff knew who the HR Director was. (*Id.*) Plaintiff told Bearden about Jones's harassment on or about August 9, 2017.[5] (*Id.* [Pl. Aff. ¶ 24].)

On August 14, 2017, Jones transferred Plaintiff to the Oak Ridge office. (*Id.* [Pl. Aff. ¶ 25].) Jones visited Plaintiff at the Oak Ridge office, asking her if she was trying to find a new job and bragging about his close relationship with Defendant's Law Director. (*Id.* [Pl. Aff. ¶ 26].)

---

[5] There is a lack of consistency in the parties' filings about the exact date of Plaintiff's complaint to Bearden. Defendant alleges Plaintiff's complaint to Bearden was prompted by her receiving a third disciplinary warning on August 9, 2017. (Doc. 34 at 4 & n.4 (citing Pl. Dep. at 80 & Ex. 8.).) Plaintiff testified in her deposition, however, that she did not recall a third write-up. (Doc. 33-1 at 21 [Pl. Dep. at 80].) The exhibit Defendant cites for support is an email from a judicial assistant to Jones complaining about Plaintiff's performance in court, but there is no evidence Plaintiff received that email. (*Id.* at 54 [Pl. Dep. at Ex. 8].) Taking all of the factual disputes in Plaintiff's favor, the precise date of the complaint is not material to the motion.

On September 14, 2017, Bearden asked Plaintiff to sit for a sworn statement. (Doc. 33-2 [Sworn Statement].) The statement was recorded by a court reporter and consisted of questions by a representative of the HR Department[6] and answers by Plaintiff. (*Id.*) After she gave the statement, Bearden told Plaintiff to go home and call in sick for a few days. (Doc. 38-5 at 5 [Pl. Aff. ¶ 27].) Bearden placed Plaintiff on leave under the Family and Medical Leave Act ("FMLA") the next week. (*Id.* [Pl. Aff. ¶ 27].) Plaintiff remained on FMLA leave until on or around March 18, 2018, when Defendant placed her in a position at the Anderson County Senior Center. (*Id.* [Pl. Aff. ¶ 28].) Plaintiff had no further contact with Jones after she was placed on leave. (Doc. 33-1 at 24 [Pl. Dep. at 91].)

On February 20, 2018, Defendant's Board of Commissioners adopted a "Resolution to Admonish and Censure William T. Jones." (Doc. 40-1 at 1 [Jeffers-Whitaker Aff. ¶ 6]; Doc. 40-5 [Resolution].) The Resolution asserted there had been multiple reports of Jones's inappropriate workplace conduct, namely

> unwelcome sexual advances; solicitation of sex; lewd and vulgar text messages of a sexual nature; unwanted touching in a provocative manner; unprofessional remarks to employees . . . ; threatening behavior; retaliatory discharge and punishment for those employees that refuse to participate; unlawful employment interview questions; all having the combined cumulative effect of creating a hostile work environment for County employees.

---

[6] The person asking the questions is not identified in the excerpt submitted by Defendant or in Defendant's brief. (*See, e.g.*, Doc. 33-2 at 1 [Sworn Statement at 1].) Bearden and Kim Whitaker, who apparently later succeeded Bearden as HR Director, are listed as being present. (*Id.*) No one else is listed as being present. (*Id.*) Plaintiff asserts that she was not advised that she could have counsel at the sworn statement, but she seems to point for support only to the list of appearances. (Doc. 38 at 12 (citing Doc. 33-2 [Sworn Statement].)

(Doc. 40-5 [Resolution] (footnotes omitted[7]).)   The Resolution stated that, "[i]f true, these allegations may constitute an unlawful employment practice in violation of *Title VII of the Civil Rights Act of 1964* and the *Anderson County Comprehensive Personnel Policy*."  (*Id.* (footnote omitted).)  It recited that HR had been forced to relocate at least one employee for her protection, and that Jones had refused to implement training.   (*Id.*)   The Resolution concluded by "Admonish[ing] and Censur[ing] the alleged deplorable and dishonorable conduct of" Jones and "respectfully request[ing] that Mr. Jones immediately cease this disgraceful conduct, resign his office of public trust, and publicly apologize to these women and men and to all citizens of our County."  (*Id.*)

Plaintiff continued to be employed by Defendant until September 1, 2018, when Defendant alleges she left County employment for the private sector (Doc. 34 at 5), and when Plaintiff alleges she was fired by the Clerk who defeated Jones in the 2018 primary (Doc. 38 at 12; Doc. 38-5 at 6 [Pl. Aff. ¶ 29]).  Plaintiff's termination is the subject of a separate lawsuit and is not at issue here. (*See Harness v. Anderson Cty.*, No. 3:19-cv-340.)

Plaintiff filed her complaint in this action on March 13, 2018, approximately five days before her transfer to the Senior Center.  (Doc. 1.)  She asserts three causes of action against Defendant: for hostile work environment under 42 U.S.C. § 1983 in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, for hostile work environment in violation of the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 *et*

_____

[7] The Resolution includes footnotes identifying, by number, which one or more of seven witnesses had provided support for each allegation.  (Doc. 40-5 [Resolution].)

*seq.* (the "THRA"), and for retaliation in violation of the THRA by transferring Plaintiff to Oak

Ridge.[8]  Plaintiff served Defendant with process the next day.  (Doc. 8.)

Defendant filed its motion for summary judgment on June 24, 2019.  (Doc. 33.)  Plaintiff

responded on July 22, 2019 (Doc. 38), and Defendant replied on July 24, 2019 (Doc. 40).

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The moving party bears the burden of demonstrating no genuine issue of material fact

exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897

(6th Cir. 2003).  The Court should view the evidence, including all reasonable inferences, in the

light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th

Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the

pleadings and come forward with specific facts to demonstrate that there is a genuine issue for

trial."  *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).  Indeed, a "[plaintiff] is

not entitled to a trial on the basis of mere allegations."  *Smith v. City of Chattanooga*, No. 1:08-

cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine

---

[8] Plaintiff's complaint also included as Count One a cause of action against Jones, individually and in his official capacity, for a hostile work environment under 42 U.S.C. § 1983. (Doc. 1.)  Jones filed a counterclaim.  (Doc. 12.)  The parties stipulated on June 20, 2019, that Plaintiff and Jones dismissed all of their claims against each other with prejudice.  (Doc. 32.)

whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff").  In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment.  *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.   <u>DISCUSSION</u>

The Court will first address Defendant's request for judgment as a matter of law on Plaintiff's cause of action under 42 U.S.C. § 1983 for a hostile work environment.  The Court will next address Defendant's motion as to Plaintiff's two THRA claims, first considering Defendant's request that the Court decline to exercise supplemental jurisdiction over the claims, and then considering Defendant's motion as to the merits of each claim.  Finally, the Court will consider Defendant's request for partial summary judgment as to Plaintiff's federal and state claims for hostile work environment on statute-of-limitations grounds.

## A. Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must "demonstrate that a person acting under color of state law 'deprived [him] of rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011) (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)). A § 1983 suit against a municipality, such as a county, involves a two-pronged inquiry. *Cash v. Hamilton Cty. Dep't of Adult Prob.,* 388 F.3d 539, 542 (6th Cir. 2004). A court must determine (1) whether the plaintiff has been deprived of a constitutional right and (2) whether the municipality is responsible for the violation. *Id.* Defendant asserts it is entitled to judgment as a matter of law on both prongs.

### 1. Deprivation of a Constitutional Right

Plaintiff alleges a violation of her rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. (Doc. 1 at 8.) "Sexual harassment by a government official violates the Equal Protection Clause." *Hickman v. Laskodi*, 45 F. App'x 451, 454 (6th Cir. 2002) (citing *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988)).

Defendant asserts Plaintiff "fails to submit admissible facts of a constitutional violation." (Doc. 34 at 8–9.) As support, Defendant cites two cases which held that a municipality was not liable under § 1983 where the alleged individual wrongdoers had not violated the plaintiff's constitutional rights in the first place. (*Id.* (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) and *Watkins v. Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001)).) As Plaintiff points out (Doc. 38 at 15), Defendant does not explain or support its actual assertion—that Jones did not violate Plaintiff's constitutional rights in the first place. Defendant offers no analysis of this

question, either to show the facts Plaintiff has alleged are insufficient to establish a constitutional violation or to show any of those facts are inadmissible.

Defendant's own summary of Plaintiff's employment experience with Jones, however, acknowledges Plaintiff's allegations of Jones's harassment, intimidation, improper suggestions, vulgar language, and inappropriate physical contact with her. (Doc. 34 at 4 & n.3.) It is not clear to the Court how even this brief summary is consistent with Defendant's bald assertion that Jones did not violate Plaintiff's constitutional rights. Plaintiff, moreover, responds with a detailed presentation of the facts she alleges created a hostile work environment, supported by specific citations to the record. (Doc. 38 at 7–12.) Defendant's reply adds nothing to this argument, merely asserting that "the majority of the facts asserted in [Plaintiff's] response are not relevant to the allegations against this Defendant alleged by the Plaintiff in her Complaint." (Doc. 40 at 1.)

The Court has reviewed and summarized above both parties' factual allegations and the portions of the record they have cited. *See supra* § I(B). It has done so viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff. *See Matsushita Elec.*, 475 U.S. at 587. The Court concludes Defendant is not entitled to judgment as a matter of law on whether Jones violated Plaintiff's rights.

### 2. Municipal Liability

The Court turns next to Defendant's arguments on the second prong of Plaintiff's § 1983 action: whether Defendant can be held liable for Jones's alleged violation of Plaintiff's rights.

Although local government bodies can be sued under 42 U.S.C. § 1983, they cannot be held vicariously liable for their employees' actions under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, they can be held liable only when an

official policy or custom "'causes' an employee to violate another's constitutional rights." *Id.* at 692. A plaintiff may show the existence of such an official policy or custom in at least four different ways: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."[9] *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Plaintiff's complaint alleges Jones had final policymaking authority for personnel matters, policies and practices, and employment decisions within the Clerk's Office. (Doc. 1 ¶ 40.) The complaint thus invokes the second avenue for establishing municipal liability: actions taken by officials with final decision-making authority. *See Spears*, 589 F.3d at 256. Defendant does not dispute that Jones had final decision-making authority for purposes of its motion for summary judgment. (Doc. 34 at 9.) It argues instead that "the established precedent of this . . . district provides that [Defendant] is not liable for [Jones's] alleged actions without some admissible proof that either a county policy or custom condoned the same." (*Id.*) Defendant provides a three-paragraph block quotation from *Beckman v. Bivens*, No. 3:06-CV-384, 2009 WL 1748738, at *8–

_____

[9] Defendant describes the second avenue of municipal liability as follows: "that an official with policymaking authority ratified illegal actions." (Doc. 34 at 7 (quoting *Burgess v. Fischer*, 735 F.3d 462, 468 (6th Cir. 2013)).) This is too narrow a description for purposes of this case. In *Burgess*, ratification was the only theory at issue for the policymaker argument: the alleged deprivation of rights was committed by non-policymakers, and the parties were arguing whether a policymaker had later ratified those actions during an investigation. *See Burgess*, 735 F.3d at 479. The narrowed characterization of the second avenue of establishing *Monell* liability set out in *Burgess* is not appropriate here, where Plaintiff's harms were allegedly caused by a policymaker himself.

14

9 (E.D. Tenn. June 19, 2009), in support of the proposition that even if Jones was a policymaker, Plaintiff "must link Jones's alleged actions to a policy or custom of [Defendant]." (Doc. 34 at 9–10.)

The Court sees two problems with Defendant's argument. First, it rests entirely on *Beckman*, which is a district court opinion. Opinions from district courts are not binding precedent. *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 802 n.16 (6th Cir. 2005); *see also Liebisch v. Sec'y of Health & Human Servs.*, 21 F.3d 428, 1994 WL 108957, at *2 (6th Cir. Mar. 30, 1994) (Table) ("District Court opinions have persuasive value only and are not binding as a matter of law."). Defendant must "show[] that . . . [it] is entitled to judgment as a matter of law" in order to receive summary judgment in its favor. Fed. R. Civ. P. 56(a). Because the sole authority on which Defendant relies is of persuasive value only, Defendant has not met its burden to show it is entitled to judgment as a matter of law on this issue.

Second, the Court respectfully disagrees with the reasoning of *Beckman*, at least as Defendant seeks to apply it here. The salient portion of Defendant's quotation from *Beckman* is as follows:

> The plaintiffs argue that county officials, including the county mayor, Allen Watson, contributed to the decision making process in this case. The plaintiffs further argue that Bivens, as the Sheriff, was the highest ranking law enforcement official, and thus was the policy maker with respect to law enforcement decisions. ***While it is true that Bivens and Watson would be considered policy makers in this case, the plaintiffs point to no county policies or customs which authorized the alleged unlawful terminations in this case.*** As the Court noted above, *respondeat superior* does not apply to § 1983 actions, thus the fact that policy makers allegedly violated the plaintiffs' rights does not automatically equate to a finding of liability for Monroe County. Rather, the plaintiffs must set forth some proof of county customs or policies which condoned Bivens' actions. The plaintiffs have presented no such proof.

*Beckman*, 2009 WL 1748738, at *9 (emphasis added). Defendant, similarly, asks the Court not to find Defendant liable unless Plaintiff identifies a municipal policy or custom that harmed her, in addition to showing Jones's actions as a policymaker harmed her. (Doc. 34 at 10.) It is not apparent how such an approach would square with the rule that a plaintiff may show the existence of an official policy or custom by showing "actions taken by officials with final decision-making authority." *See Spears*, 589 F.3d at 256. The Supreme Court has explained that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," and that *Monell* "expressly envisioned . . . officials 'whose acts or edicts may fairly be said to represent official policy,' . . . and whose decisions therefore may give rise to municipal liability under § 1983." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (internal citation omitted) (quoting *Monell*, 436 U.S. at 694). Defendant's arguments fail to convince the Court that Defendant is entitled to judgment because Plaintiff has allegedly not proven a policy or custom separate and apart from the actions of Jones.

The parties briefly address the third and fourth avenues of proving municipal liability. (Doc. 34 at 8 n.7; Doc. 38 at 16; Doc. 40 at 2.) Plaintiff, for example, argues Defendant failed to take action on the complaints it received about Jones before Plaintiff was hired, and it had a custom of turning a blind eye to such violations, thus invoking the custom-of-tolerance avenue. (Doc. 38 at 16.) Defendant responds that it was only made aware of one complaint before Plaintiff's (Doc. 40), but Plaintiff has submitted evidence of at least two earlier complaints, Lucas's and Brown's. (Docs. 38-2, 38-3.) Because the Court has concluded that Defendant is not entitled to summary judgment on a policymaker theory of municipal liability at a minimum, however, and because Defendant has not asked for judgment as a matter of law on the various individual theories of

liability, it is unnecessary for the Court to consider these additional arguments. The Court will **DENY** Defendant's motion for summary judgment on Plaintiff's § 1983 claim.

### B. THRA

Defendant asks the Court to decline to exercise supplemental jurisdiction over Plaintiff's two THRA claims. In the event the Court maintains supplemental jurisdiction over those claims, Defendant also moves for summary judgment on the merits of Plaintiff's state-law claims for hostile work environment and retaliation.

#### 1. Supplemental Jurisdiction

Counts Three and Four are state-law claims for hostile work environment and retaliation over which the Court has supplemental jurisdiction because "they form part of the same case or controversy under Article III of the United States Constitution" as the § 1983 claim over which the Court has original jurisdiction. 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim in the following circumstances:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In making this discretionary decision, a district court should weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Despite using language from 28 U.S.C. § 1367(c), Defendant does not cite 28 U.S.C. § 1367(c) or any cases discussing the factors that should guide the Court's discretion in

determining whether to decline to exercise jurisdiction over Plaintiff's state-law claims. Defendant nevertheless appears to ask the Court to decline to exercise supplemental jurisdiction on the first and fourth of the above grounds: "novel issues of state law" and other "compelling reasons."[10] (Doc. 34 at 11–15.)

Defendant points out that Jones is an elected official whom Defendant cannot remove from office without going through statutorily prescribed procedures. (*Id.* at 11.) Defendant asserts "there is clear separation between the county[] and Jones," in that Defendant had an anti-discrimination policy, Jones sought to intimidate Plaintiff by telling her he did not have a boss, and Defendant censured Jones by passing a resolution regarding his alleged conduct. (*Id.* at 12–13.) Defendant submits that there may be interpretational differences between the THRA and Title VII, and it believes Jones's position as an elected official makes this a case of first impression under the THRA. (*Id.* at 14.) It argues Plaintiff could have brought her federal claims in state court.[11] (*Id.*) Defendant makes the unsupported and irrelevant assertion that "[a]s a result of [Plaintiff's] status, she is probably not an employee within the meaning of Title VII capable of

---

[10] The structure of Defendant's argument on supplemental jurisdiction is difficult to discern, as it is not explicitly organized under the statute and it is located both in the section so titled (Doc. 34 at 11–13) and in the section titled as addressing the merits of Count Three (*id.* at 13–15).

[11] Defendant makes the additional assertion that Plaintiff "complicate[d] matters" because she "sued directly into court despite the employer/employee relationship between Harness and Jones alleging liability under Section 1983." (Doc. 34 at 13.) The Court is unsure of the significance Defendant attaches to this statement for purposes of a supplemental jurisdiction analysis.

invoking its protection."[12] (*Id.* at 12.)  Defendant also asserts that Plaintiff's federal and state-law claims "do[] not necessarily arise out of the same transaction or occurrence," but does not explain in what ways it sees the sources of the claims differing.  (*Id.* at 14.)

The Court sees no issue in Plaintiff's THRA claims so novel or complex that the values of judicial economy, fairness, or comity would counsel toward declining supplemental jurisdiction. On the contrary, the values of judicial economy, convenience, and fairness all support maintaining supplemental jurisdiction, given the common factual and legal issues between Plaintiff's federal and state claims.  The Court also sees no circumstances so exceptional or reasons so compelling as to incline the Court to decline supplemental jurisdiction over Plaintiff's THRA claims.  The Court therefore considers Defendant's motion as to the merits of Plaintiff's THRA claims.

### 2.  Hostile Work Environment Under the THRA

Count Three seeks damages from Defendant for an alleged hostile work environment in violation of the THRA. (Doc. 1 at 9–10.)  When the alleged harasser is a coworker, a plaintiff must establish the following to make a prima facie case:

(1)  the employee is a member of a protected class;
(2)  the employee was subjected to unwelcomed sexual harassment;
(3)  the harassment occurred because of the employee's gender;
(4)  the harassment affected a 'term, condition, or privilege' of employment; and

---

[12] Plaintiff has not sued under Title VII, and Defendant does not explain what it means by Plaintiff's "status."  Defendant does cite *Gentzler v. Hamilton County, Tennessee*, No. 1:15-cv-295, 2017 WL 10403276, at *11 (E.D. Tenn. Sept. 20, 2017), which addressed whether a plaintiff was exempted from Title VII's definition of "employee" because she was on the alleged harasser's personal staff or was herself a policymaking employee.  *See* 42 U.S.C. § 2000e(f).  Not only are there no such facts here, but there is also not such an exception under the THRA.  The *Gentzler* opinion discussed this distinction between Title VII and the THRA, 2017 WL 10403276 at *11–12, and Defendant acknowledges *Gentzler* "ultimately distinguished Title VII and the THRA on this issue," (Doc. 34 at 12).

(5)     the employer knew, or should have known[,] of the harassment and failed
        to respond with prompt and appropriate corrective action.

*Theus v. GlaxoSmithKline*, 452 F. App'x 596, 600 (6th Cir. 2011) (quoting *Campbell v. Fl. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)).  When the alleged harasser is a supervisor, the fifth element is taken as established, but the employer may assert an affirmative defense if, among other things, "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and . . . the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* (quoting *Allen v. McPhee*, 240 S.W.3d 803, 812 (Tenn. 2007)).

Defendant asserts Plaintiff cannot establish any of the elements except the first, that she was a member of a protected class.  (Doc. 34 at 16.)  Defendant provides no argument, however, as to the second, third, or fourth elements—unwelcomed sexual harassment because of gender that affected a term, condition, or privilege of her employment.  (*See id.*)  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (alteration in original; citation omitted).  The Court will therefore proceed to the matter on which Defendant does make arguments, the fifth element of the prima facie case.

Defendant asks the Court to analyze Plaintiff's claim as one of coworker harassment because Jones's status as an elected official created a conflict of interest with Defendant. Defendant argues it could then be liable only in two circumstances.  First, it could be liable if it was ignorant of the sexual harassment and its ignorance was due to its own negligence.  (Doc. 34 at 15 (citing *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 873 (6th Cir. 1997) (overruled

on other grounds as recognized by *Collette v. Stein-Mart, Inc.*, 126 F. App'x 678, 684 n.3 (6th Cir. 2005)).) Second, Defendant argues it could be liable if it was aware of the sexual harassment and its response amounted to indifference or unreasonableness. (Doc. 34 at 16 (quoting *Layman v. C&D Techs.*, No. 1:3-cv-275, 2004 WL 6074953, at *6 (E.D. Tenn. Nov. 4, 2004)).)

Defendant makes various arguments that its response to Plaintiff's harassment complaint was reasonable. It points out that Plaintiff complained on August 9, 2017, Defendant took her sworn statement on September 14, 2017, and Defendant removed her from Jones's supervision "immediately" after that. (Doc. 34 at 16.) Defendant also argues it followed the procedures in its personnel handbook, and it passed a Resolution stating Jones's actions, if they happened, deserved condemnation by Defendant's mayor and county commission. (*Id.* at 17.) Defendant makes no specific argument on the first avenue of liability, however. Plaintiff, on the other hand, points the Court to evidence that Defendant never disseminated its harassment-reporting policy to Plaintiff or otherwise educated Plaintiff on how to report sexual harassment. (Doc. 38 at 11 (citing record), 16.)

The Court concludes Defendant would not be entitled to judgment as a matter of law if the Court were to adopt a coworker-harassment framework. Defendant has not shown its ignorance of Jones's alleged harassment of Plaintiff was due to some cause other than its own negligence in failing to inform Plaintiff of its harassment policy and reporting mechanisms. Defendant has also not shown its response was reasonable once Plaintiff did complain. More than a month elapsed between Plaintiff's complaint and its removal of Plaintiff from Jones's supervision by placing her on leave, and Defendant has pointed to no precedent to show that either such a delay or such an allegedly remedial action is reasonable.

The result would be the same if the Court were to analyze Plaintiff's claim as one of harassment by a supervisor. Defendant has not shown it is entitled to judgment as a matter of law on the affirmative defense. Plaintiff has provided specific facts showing Defendant never gave her a copy of its harassment policy or otherwise informed her of how to report sexual harassment. Defendant therefore has not shown Plaintiff unreasonably failed to take advantage of its reporting policies.

Under either standard, Defendant is not entitled to judgment as a matter of law. The Court will therefore **DENY** Defendant's motion for judgment as a matter of law on Plaintiff's claim for a hostile work environment in violation of the THRA.

### 3.     Retaliation Under the THRA

Count Four seeks damages from Defendant for allegedly retaliating against Plaintiff in violation of the THRA. (Doc. 1 at 10.)

Defendant argues it is undisputed that Plaintiff was not subject to retaliation. (Doc. 34 at 17.) It argues that placing Plaintiff on leave for some six months after she complained of sexual harassment is not retaliation because her pay and benefits stayed the same. (*Id.* at 17–18.) It also argues Plaintiff cannot prove retaliation because, during her deposition, she "was asked repeatedly to identify or name one person with the county that retaliated against her," but she could not. (*Id.* at 18.)

This section of Defendant's memorandum contains no citations of law, no list of the elements of a THRA retaliation claim, no definition of retaliation under the THRA, nor any discussion of whether the Court must apply a burden-shifting analysis such as that set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As stated above, "[i]t is not sufficient

for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson*, 125 F.3d at 995–96 (alteration in original; citation omitted). It is up to Defendant to show it is entitled to judgment as a matter of law. It has not done so here.[13] The Court will **DENY** Defendant's motion for summary judgment on Plaintiff's THRA retaliation claim.

## C.       Statute of Limitations

Defendant asks in the alternative for partial summary judgment on Counts Two and Three, Plaintiff's hostile-work-environment claims under § 1983 and the THRA. (Doc. 34 at 17.) Defendant asserts that both claims are subject to a one-year statute of limitations. (*Id.*) Because Plaintiff filed her lawsuit on March 13, 2018 (Doc. 1), Defendant argues she may not recover for any acts that occurred before March 13, 2017. (Doc. 34 at 17.)

---

[13] Defendant's factual allegations in this section also miss the mark. Defendant implies it was Plaintiff's fault she stayed on leave so long, in that she "finally accepted" a new position after "multiple interviews at other departments within the county." (Doc. 34 at 17–18 & n.12; *see also* Doc. 34 at 17 ("After doing nothing for six months while receiving [full pay and benefits] . . . .").) Even if Defendant had pointed the Court to law making this relevant, Defendant provides no record citation to support these factual assertions. The only record citation from the parties on this issue is Plaintiff's reliance on her Affidavit, in which she stated it was Defendant who placed her at the senior center. (Doc. 38 at 12 (citing Doc. 38-5 [Pl. Aff.] ¶ 28).) As to Plaintiff's inability to name someone who retaliated against her, Defendant's factual summary points the Court to three pages of Plaintiff's deposition testimony. (Doc. 34 at 5 (citing Doc. 33-1 at 11 [Pl. Dep. at 38–40].) Those pages reflect a number of questions from Defendant's counsel about who besides Jones retaliated against her, objections by Plaintiff's counsel, and expressions of confusion from Plaintiff as to how to answer the question, culminating in her statement that "I think the county has entirely let it happen. They continued to let it happen. . . .  Names in particular I'm not sure, but I know the county is who moves me here and doesn't let me know my future." (Doc. 33-1 at 11 [Pl. Dep. at 38–40].) The Court would be hard pressed to interpret this as a concession by Plaintiff that no one but Jones had retaliated against her.

Defendant provides no citations of law to support its assertions about the applicable statutes of limitations or any other part of this argument.  Nor has Defendant addressed whether these claims allege continuing violations such that the statute of limitations might not bar earlier actions from consideration.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–19 (2002) (hostile work environment claim under Title VII is timely if plaintiff files Equal Employment Opportunity Commission charge that is timely as to any acts that are part of the hostile work environment); *Sharpe v. Cureton*, 319 F.3d 259, 267–69 (6th Cir. 2016) (applying principles of *Morgan* to statute-of-limitations analysis in § 1983 action).  The Court concludes that Defendant has not met its burden as movant to show that it is entitled to summary judgment on acts occurring before March 13, 2017.  *See McPherson*, 125 F.3d at 995–96.  The Court will **DENY** Defendant's motion for partial summary judgment based on the statute of limitations.

IV. <u>**CONCLUSION**</u>

The Court will **DENY** Defendant's motion for summary judgment (Doc. 33).

**An appropriate order will enter.**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**